IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:01-507-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| JORGE GONZALEZ-VASQUEZ | ) | |
| _____ | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 858). Seeking compassionate release, the defendant states that he is not a danger to society, and that his mother is very ill and needs 24 hour in-home care.

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release. The defendant replied to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States*

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

1

*v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(I) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling

reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The government concedes that the defendant has exhausted his administrative remedies. Thus, the court will proceed to review the matter on the merits.

DISCUSSION

*Motion for Compassionate Release*

In his motion (ECF No. 858), the defendant does not suggest that he has any particular medical or health problems. Rather, he contends that: (1) he is deserving of a sentence reduction because he has already served 30 years of his multiple sentences;[2] (2) he is no longer a danger to the community; (3) the § 3553(a) factors weigh in his favor for release; and (4) his mother is very ill and needs 24-hour care. He is 60 years old and is scheduled to be released in 2037. He is presently housed at USP Pollock.

The government takes the position that the defendant does not present an extraordinary and compelling reason for consideration of release. Moreover, the government argues that the § 3553(a) factors do not weigh in favor of the defendant's release.

*Procedural History*

In the early 1990s, the defendant was involved in the international distribution of multi-kilogram quantities of heroin, cocaine, and marijuana. In August 1993, the defendant was convicted in a drug conspiracy import and possession case involving heroin. He was sentenced in the Federal District of Puerto Rico to a term of 262 months. While he was in custody as an inmate at a Detention Center in Puerto Rico, he was convicted of possession of marijuana and sentenced to 12 months confinement, to run consecutive to the August 1993

---

[2] Based upon the two prior sentences imposed (274 months) in the District of Puerto Rico, the defendant has only served 7 years of the 327-month sentence imposed by this court in the District of South Carolina.

sentence of 262 months. He was also separately charged and convicted in May 1994 with unlawful possession with intent to distribute cocaine in the Middle District of Pennsylvania. He was sentenced to 97 months to run concurrent with his earlier 262-month (plus 12 months) sentence.

The defendant's case before this court in the District of South Carolina arose out of an investigation starting in 1998 into a drug smuggling and gambling ring at the Federal Correctional Facility (FCI) in Edgefield, South Carolina. At the time of this offense, the defendant was incarcerated at the Bureau of Prisons (BOP), serving two consecutive sentences of 262 and 12 months from the District of Puerto Rico for drug trafficking.

The defendant was one of the leaders of the prison drug smuggling and gambling ring. He had family members in Puerto Rico obtain heroin, marijuana and other drugs in Puerto Rico and ship the drugs to persons in North Carolina who then sent the drugs to persons in South Carolina who would smuggle the drugs into the prison. This operation was large and involved a number of persons to run. The operation also included a gambling portion where inmates were betting on sporting events and used persons on the outside to collect and pay off the debts. The defendant was the leader of this conspiracy. He was also a high-ranking member of the G-27 gang, which originally started out as a Puerto Rican prison gang.

The defendant and his co-defendants distributed approximately 80.95 grams of heroin and 396.6 grams of marijuana during the life of the conspiracy at FCI Edgefield. Additionally, the defendant's relevant conduct at FCI Atlanta involved the distribution of 136.5 grams of heroin and 907.2 grams of marijuana. The money proceeds from the illegal

gambling operation was sent to various family members in Puerto Rico and North Carolina.

In August 2001, the defendant was named in a 29-Count Indictment, along with 22 other individuals. He was charged in the following Counts:

    Count 1:    Conspiracy to conduct financial transactions in interstate commerce involving proceeds of specified unlawful activity, in violation of 18 U.S.C. §1956(a)(1)(A)(i);

    Count 2:    Conspiracy to possess with the intent to distribute more than 100 grams of heroin and less than 50 kilograms of marijuana, in violation of 21 U.S.C. §§841(a)(1) and 846.

    Count 13,16:    Possession with the intent to distribute less than 100 grams of heroin (on different days), in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(C) and 18 U.S.C. §2; and

    Count 14,17:    Providing and attempting to provide a prohibited item to inmates at FCI Edgefield (on different days), in violation of 18 U.S.C. §§1791(a)(1), (b)(1), (d)(1)(C) and 2.

The government filed an Information pursuant to 21 U.S.C. § 851 (ECF No. 337) notifying the defendant that he was subject to enhancements based upon his prior convictions. On March 22, 2002, a jury found the defendant guilty on all Counts.

The Presentence Report (PSR) (ECF No. 852) determined that the defendant was a career offender based upon his prior convictions.[3] As a career offender, his criminal history

---

[3] The prior convictions include: (1) Violation of P.R. [Puerto Rico] Controlled Substance Law on 10-1-1982; (2) Violation of P.R. Controlled Substance Law on 1-17-1988; (3) Violation of Art. 424 of the P.R. Controlled Substance Law on 05-21-1991; (4) Conspiracy to import and possess with intent to distribute heroin, aiding and abetting on 08-19-1993; and (5) Unlawful possession with intent to distribute cocaine on 05-31-1994.

category was VI.[4] The defendant received an enhancement for his role in the offense, obstruction of justice (threat made to a co-conspirator), and a specific offense characteristic. He did not receive an adjustment for acceptance of responsibility. His offense level was calculated at 36, which when combined with a category VI criminal history, produced a Guidelines range of 324 to 405 months. This court sentenced the defendant to 405 months on August 22, 2002.

In November 2015, the defendant moved for a reduction in his sentence based upon Amendment 782 to the U.S. Sentencing Guidelines. The 2-level reduction produced a new Guideline range of 262 to 327 months, down from 405-month original sentence. This court granted the motion, but resentenced the defendant to 327 months—the high end of the new Guidelines. This was because the defendant had incurred several disciplinary infractions while he was housed at the BOP, including the following:

- Involvement in a plot to attempt to introduce suboxone into USP Lewisburg via mail on or about July 15, 2015;

- Destruction of property of $100 or less on or about August 13, 2014;

- Orchestrating a narcotics/tobacco interstate mail introduction scheme into the BOP on or about August 4, 2014;

- Giving and/or accepting money without authorization on or about February 3, 2014;

- Using another inmates account while on restriction on or about October 3, 2013 (3 counts);

---

[4] Even without the career offender designation, the defendant would still be a category VI because his criminal history points totaled 16, which calls for a category VI.

- Receiving cash money from another inmate on or about October 3, 2013;

- Possessing unauthorized item and refusing to obey an order on or about February 16, 2011;

- Stealing staff paper on or about September 10, 2009;

- Giving and/or accepting money without authorization on or about January 29, 2007;

- Refusing to obey an order on or about July 11, 2006;

- Using of drugs/alcohol (THC Metabolite) on or about February 9, 2006;

- Failing to follow safety regulations on or about September 16, 2003;

- Use of narcotics (cannabinoids) on or about November 13, 2001; and

- Possessing a non-hazardous tool on or about June 13, 2000.

In his motion for compassionate release, the defendant asserts that his incarceration rehabilitation indicates that he is no longer a danger to the community. He states that he has never physically injured anyone, and that over the past 30 years in prison he has become a responsible adult. He points to the length of time he has been incarcerated and the number of vocational classes ("well over thousands of hours combined") he has taken as an indication of his rehabilitation. He also notes that he acquired his GED in 2012.

The defendant also suggests that this court should consider the need to avoid unwarranted sentence disparities among defendants with similar records. He contends that with regard to his combined 667-month sentence (which includes 262 months and 12 months from the District of Puerto Rico and 327 months from the District of South Carolina), those sentencing practices are no longer allowed under the First Step Act. He says that if sentenced

today, he would only face a maximum combined sentence of 188 to 235 months (432 months less than the 667 months he received).  The defendant provides no explanation for how his sentence would be lowered, he only suggests that he has served more than enough time for his offenses.

He further claims that his 54 year and 8 month sentences combined for "admittedly making bad decisions to involve myself in peddling poison and gang affiliation and criminality dating back over the course of 40 plus years."  He argues that this sentence is "manifestly unjust because it is exceedingly hard and extends far past the overall intent of a person replaying his or her debt to society for his or her evil transgressions against humanity."  He also attests that he no longer belongs to or associates with his old gang or any gang for that matter.  He says that statistically offenders aged 60 years and older have a lower rate of recidivism.

The defendant states that he has a very sick mother in Puerto Rico with many debilitating conditions and who needs 24 hour in-home health care.[5]  He intends to fully provide the health supervision, love, and care his mother needed at this time, while also working to formalize a commercial trucking company in Puerto Rico.  In his reply he states that his mother is currently being cared for by her children and grandchildren.  He says that by allowing him to provide the in-home 24-hour care that his mother needs will not only allow him to appropriate the time and space needed to reintegrate back into society and to

---

[5] The defendant's mother was a co-defendant in this case and was given a lenient sentence of probation by this court.

stabilize mentally after being incarcerated for the last 30 years. He states that his grand daughter has begun formalizing his plans of starting the commercial trucking company. He says that learning to work from home will allow him the time needed to begin to reconcile with his children and family.

After carefully considering the applicable law, the arguments of the parties, and the record before it, the court concludes that the defendant has not met his burden of establishing that he has an extraordinary and compelling reason such that he is eligible for release under § 3582(c)(1)(A). The court agrees with the government that if it were to grant the defendant's motion based upon these reasons, i.e., the desire to care for a sick relative who is being cared for by other relatives, and the desire to start a new business, then almost any reason rises to the level of extraordinary and compelling reason for a sentence reduction.

As the court finds no extraordinary and compelling reason for consideration of release, it is not necessary for the court to address the § 3553(a) factors. However, because the defendant insists that his § 3553(a) factors weigh strongly in his favor, the court will discuss them in turn.

*§ 3553(a) Factors*

Under Fourth Circuit guidance, this court will now make an individualized assessment of the defendant's case, with specific attention to the 18 U.S.C. § 3553(a) factors. This review will also consider the defendant's post-sentencing conduct while incarcerated, and any other arguments advanced by the defendant in his memoranda.

1.  *Nature and Circumstances of the Offense*.  The procedural history of the defendant's criminal case and offenses are set out earlier in this order.

2.  *History and Characteristics of the Defendant*.  The defendant was 40 years old at the time of the instant conviction and is now 60 years of age.  He was born in Puerto Rico to Victor Gonzalez and Gladys Vasquez Alvarez.  His mother was a co-defendant in this case.  She pleaded guilty and was sentenced to three years probation, including home detention with electronic monitoring for 6 months.  The defendant's father was a truck driver who passed away in 1986.  According to the PSR prepared in 2002, the defendant has 6 siblings in Puerto Rico.  He was married in 1982 and has three children with his wife and one child outside of that marriage.  He has been incarcerated since 1991.

*Post Sentencing Conduct*

Commendably, the defendant has utilized his incarceration to better himself and has taken numerous educational and vocational courses at the BOP.  He also earned his GED and says he has become proficient in the English language.

On the other hand, the defendant has a number of disciplinary infractions that are quite serious and concerning to this court.  The most recent infraction occurred in 2015 and involved a plot to attempt to introduce illegal substances into the U.S. Penitentiary in Lewisburg, Pennsylvania.  This was after the fact that he had already been convicted by this court in August 2002 for running a gambling and drug conspiracy ring inside the Edgefield, South Carolina Bureau of Prisons, and while he was incarcerated for previous drug trafficking activities in the District of Puerto Rico.

Despite the defendant's contention that he has made a "30 plus year transformation," it does not appear that he even attempted to rehabilitate himself until after the 2015 contraband plot incident or later, based on his continuing pattern of criminal activity while incarcerated.

3. *Seriousness of the Crimes*. As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crimes as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling against the defendant's immediate release.

7. *Need to Avoid Unwarranted Disparity*. Compared with the culpability of similarly situated defendants, the defendant's imposed sentence was and is in line with statutory factors.

CONCLUSION

The court determines that the defendant has not demonstrated an extraordinary and compelling reason for compassionate release relating to the amount of time he has served or as a result of his mother's illness. The defendant's release at this time is not appropriate in light of this court's investigation of the record and individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct discussed herein.

For the foregoing reasons, the motion (ECF No. 858) is denied.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.* (signature)

August 19, 2022
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge